UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PHILLIP JENSEN, ) <br> ) <br> Defendant. ) | ) <br> ) <br> ) Case No. 22-CR-30005 <br> ) Filed Under Seal <br> ) <br> ) <br> ) <br> ) |

**<u>SEALED EX PARTE MOTION TO REVOKE PRETRIAL RELEASE</u>**

COMES NOW the United States of America, by Gregory K. Harris, United States Attorney for the Central District of Illinois, and Douglas F. McMeyer, Assistant United States Attorney, and hereby states the following in support of its ex parte motion to revoke pretrial release:

1. On February 1, 2022, the grand jury returned an indictment against the Defendant, Phillip Jensen, charging him with eight counts of drug diversion in violation of 21 U.S.C. § 841(a)(1), eight counts of acquiring a controlled substance by fraud in violation of 21 U.S.C. § 843(a)(3), one count of tampering with consumer products in violation of 18 U.S.C. § 1365(a), and three counts of false statement in violation of 18 U.S.C. § 1035.

1

2. On February 9, 2022, United States Magistrate Judge Schanzle-Haskins placed the Defendant on bond with the agreement of all parties. *See* Minute Entry dated 2/9/22.

3. One of the conditions of the Defendant's bond was that he "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution." Dkt. 13 at Condition 7(g).

4. That initial bond order also placed the Defendant under a curfew. *Id.* at Condition 7(p)(i). Part of the rationale for this agreed condition was the Defendant's attempt to flee from police and his possession of several loaded handguns despite not having a valid FOID to possess such weapons.

5. Since that initial bond order, the Defendant's bond was modified to convert him from having a curfew to being monitored by GPS. *See* Dkt. 28, Dkt. 30, and Minute Entry dated 10/21/22.

6. The Defendant sought additional modification of his bond conditions in March of this year requesting that all monitoring of his location be removed. Dkt. 53. On March 15, 2024, this Court granted, in part the Defendant's motion and provided the Probation Office with "discretion on the number of checks performed daily, not to exceed

three." Text Order dated 3/15/24. This Court, however, made it clear that "[a]ll other bond conditions shall remain in effect." *Id.*

7. While this Court has modified the Defendant's bond conditions on several occasions, it has never eliminated them and it has never removed Condition 7(g) that prohibits the Defendant from having contact with any witness or potential witness in this case.

8. Despite this unwavering prohibition, the U.S. Attorney's Office has been made aware of the Defendant making unwanted and uninvited contact with Witness 1 on at least two occasions in the last three weeks. By way of background, Witness 1 is a former employee of the Defendant who is a witness for the Government in the trial that is scheduled to begin next month. Witness 1 is expected to testify regarding the Defendant's conduct, apparent issues in the Defendant's treatment of patients, and the Defendant's confession to many of his crimes. Witness 1 has known the Defendant for many years. Witness 1 knows the truck that the Defendant drives. Witness 1 knows the car that the Defendant's wife drives as well as the vanity plate "SWISSY 4" that is affixed to his wife's vehicle. Likewise, the Defendant knows the vehicle that Witness 1 drives. Witness 1 still drives the same vehicle that she did when employed by the

Defendant. Furthermore, the Defendant has ridden in Witness 1's car on many occasions. Witness 1 has given him rides home and to the dealership in her car.

9. The U.S. Attorney's Office was contacted on July 8, 2024, by Witness 1. Witness 1 reported that on July 6, 2024, at approximately 10:35 a.m., she observed the Defendant's wife's vehicle, bearing the "SWISSY 4" vanity plate, sitting outside her home in Sangamon County. She was unable to see who was in the vehicle, but when she waived toward the vehicle, it immediately drove away from her home. Witness 1 lives in the same location as she did when she was employed by the Defendant and he Defendant lives more than 4 miles from Witness 1's home.

10. On July 25, 2024, the U.S. Attorney's Office was again contacted by Witness 1 who indicated that she had been followed earlier that morning by the defendant. Witness 1 explained that when she was driving to work, the Defendant's truck approached from behind her and began following her. When they came to a stoplight, the Defendant pulled up along side Witness 1's vehicle. The Defendant then proceeded to roll down his window and inform Witness 1 that her taillight was allegedly out.

4

11. Witness 1 was able to capture this photograph of the Defendant as he was next to her.



12. Witness 1 drove away, continuing past her place of employment, and the Defendant continued to follow her.

13. When Witness 1 returned to her work, the Defendant's truck was parked in an adjacent business—a general dentistry practice. The Defendant had backed his truck into a parking space so that Witness 1's place of employment and parking space was

visible from the driver's seat of the Defendant's truck. Witness 1 reported that she has not previously seen the Defendant park by backing into parking spaces. Rather, in her experience, he typically parked by pulling front first into a parking space.

14. Witness 1 contacted the Springfield, IL Police Department ("SPD"). SPD attempted to make contact with the Defendant and was told that the Defendant was in the dentistry practice and being seen or "checked out." As of the time of this filing, a report from SPD is not available.

15. In addition to the foregoing, the Defendant has missed multiple instances of his required GPS enabled "check-ins" with Probation. Specifically, the Defendant has had the following issues with his checking in:

> a. 7/15/24 – Missed Biometric check in at 7:12 p.m.; Defendant checked in at 7:13 p.m., before having to be notified by the on call USPO.
>
> b. 7/18/24 – Missed Biometric check in at 8:13 p.m. The on call USPO texted the Defendant at 8:16 p.m., stating, "Hi Phillip you missed your check in – check in for probation please"; The Defendant did not

respond. The on call USPO then called the Defendant twice at 8:39 p.m. The Defendant did not respond. At 8:42 p.m. the Defendant texted the on call USPO stating, "I have not received any notification. My phone has not chimed once. I'm sitting here watching the RNC. Your system is a mess. Unfortunately." The Defendant then checked in at 8:44 p.m.

c. 7/19/24 – Missed Biometric check in at 1:24 p.m.; Probation Officer Gunby texted the Defendant at 1:34 p.m. and directed him to check in immediately; the Defendant checked in at 1:35 p.m.

16. Because of the nature of the relief being sought, the Government requests permission to file this Motion and the accompanying warrant under seal, *instanter*, and would request it remain sealed until further order of court.

WHEREFORE, the government requests that this Court issue the attached arrest warrant for the Defendant and that his pretrial release be revoked pursuant to Title 18, United States Code, Section 3148(b).

Respectfully Submitted,

GREGORY K. HARRIS
UNITED STATES ATTORNEY

By:  */s/ Douglas F. McMeyer*
Douglas F. McMeyer
Assistant United States Attorney
United States Attorney's Office
211 Fulton Street, Suite 400
Peoria, IL 61602
Telephone: 309-671-7050
Email: douglas.mcmeyer@usdoj.gov