UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| vs. | ) **Docket No.** 22-CR-30005 |
| | ) |
| **PHILLIP M. JENSEN,** | ) |
| | ) |
| Defendants. | ) August 02, 2024 |

**CHANGE OF PLEA**

**BEFORE THE HONORABLE COLLEEN R. LAWLESS**
UNITED STATES DISTRICT JUDGE

**A P P E A R A N C E S :**

For the Plaintiff:      DOUGLAS MCMEYER, AUSA
                      SIERRA SENOR-MOORE, AUSA
                      UNITED STATES ATTORNEY'S OFFICE
                      318 South Sixth Street
                      Springfield, IL 62701

For the Defendant:      DANIEL L. FULTZ, ESQ.
                      BROWN HAY & STEPHENS LLP
                      205 South Fifth Street
                      Suite 1000
                      Springfield, IL 62705

                      MARK K. WYKOFF, SR., ESQ.
                      WYKOFF LAW OFFICE
                      919 South Eighth Street
                      Springfield, IL 62703

Court Reporter:         JPL
                      U.S. District Court
                      600 Monroe Street
                      Springfield, IL 62701

Proceedings recorded by electronic sound recording;
Transcript produced by computer-aided transcription.


www.escribers.net | 800-257-0885

I N D E X

1

| RULINGS: | PAGE | LINE |
|---|---|---|
| Guilty Plea | 34 | 12 |
| Guilty Plea Accepted | 35 | 10 |

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

THE COURT: All right, everyone. We are on the record on 22-CR-30005, United States of America v. Phillip M. Jensen.

We have present on behalf of the Government, Assistant U.S. Attorneys Douglas McMeyer as well as Sierra Senor-Moore.

We have the defendant present in person, along with his counsel, Dan Fultz, as well as Mark Wykoff.

We are set here today for a change of plea. And it is my understanding from the documents that appear in front of me, that the defendant intends to change his plea in this case from not guilty to guilty as to Counts III, V, XIV, XV, XVII, XIX, and XX.

Is that correct, Counsel?

MR. MCMEYER: Yes, Your Honor.

MR. FULTZ: Yes, Judge.

THE COURT: Thank you.

And Counts III and V charge the defendant with drug diversion, Counts XIV and XV charge the defendant with acquiring a controlled substance by fraud, Count XVII charges the defendant with tampering with consumer products resulting in serious bodily injury, Counts XIX and XX charge the defendant with false statement relating to healthcare matters.

This is a plea agreement pursuant to 11(c)(1)(A) and (B), meaning that if the Court does not accept the recommendations of the parties, that the defendant does not have the right to withdraw his guilty plea.



            Before I will accept your guilty pleas here today,

sir, I'm going to ask you a series of questions to assure

myself that this is a valid, knowing, and voluntary plea.  If

you do not understand any of the questions that I'm asking you,

please let me know.  I will rephrase them.  And at any time you

wish to consult with your attorney, you have the ability to do

so.  Do you understand, sir?

            THE DEFENDANT:  Yes, ma'am.

            THE COURT:  All right.  Would you raise your right

hand for me?

                DEFENDANT, PHILLIP M. JENSEN, SWORN

            THE COURT:  All right.  Mr. Jensen, do you understand

that you are now under oath and if you answer any of my

questions falsely, your answers may later be used against you

in prosecution for perjury or making a false statement.

            THE DEFENDANT:  Yes, ma'am.

            THE COURT:  Would you state your full name and address

before you went into custody?

            THE DEFENDANT:  Phillip, two L's, M. Jensen,

J-E-N-S-E-N.  My address is 5550 Chicken Bristle Road,

Rochester, Illinois 62563.

            THE COURT:  And where were you born?

            THE DEFENDANT:  Seattle, Washington.

            THE COURT:  And how old are you?

            THE DEFENDANT:  63.  64 in September.



1          THE COURT:  How far did you go in school?

2          THE DEFENDANT:  Excuse me?

3          THE COURT:  How far did you go in school?

4          THE DEFENDANT:  Post-high school or including?

5          THE COURT:  Obviously, we graduated from high school?

6          THE DEFENDANT:  Yes, ma'am.  Counting my residency

7   training, thirteen years.

8          THE COURT:  All right.  And are you able to read,

9   write, and understand the English language?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Have you been treated recently for any

12   mental illness?

13          THE DEFENDANT:  No, ma'am.

14          THE COURT:  Have you been treated recently for any

15   addiction to alcohol or narcotic drugs of any kind?

16          THE DEFENDANT:  No, ma'am.

17          THE COURT:  Are you now or have you recently been

18   under the care of a physician or a psychiatrist?

19          THE DEFENDANT:  I am under a -- a routine physician's

20   care, but it's just routine physicals and blood tests and that

21   sort of thing.

22          THE COURT:  Do you have to take any medications that

23   are prescribed --

24          THE DEFENDANT:  I --

25          THE COURT:  -- to you on a daily basis?



THE DEFENDANT: I do, ma'am.

THE COURT: And what are those medications? What do they treat? You don't have to go --

THE DEFENDANT: Well --

THE COURT: -- through each medication.

THE DEFENDANT: -- one -- Fluoxetine is the generic for Prozac. It's for anxiety and mood stabilization.

THE COURT: Um-hum.

THE DEFENDANT: And I take Lipitor for just familial high cholesterol and allergy medicine as necessary.

THE COURT: And how long have you been taking those prescribed medications?

THE DEFENDANT: Wow.

THE COURT: It --

THE DEFENDANT: Probably --

THE COURT: -- doesn't have to be exact.

THE DEFENDANT: -- fifteen years. Fifteen, sixteen years --

THE COURT: Oh.

THE DEFENDANT: -- probably.

THE COURT: And do those medications, at any point, do they impact your ability to understand the proceedings here today?

THE DEFENDANT: No, ma'am.

THE COURT: All right. Are you currently under the



influence of any drug, medication, or alcoholic beverage of any kind?

THE DEFENDANT:  I am not.

THE COURT:  How do you feel physically today?

THE DEFENDANT:  Pretty well.  Cold --

THE COURT:  Cold?  Okay.

THE DEFENDANT:  -- but pretty well.

THE COURT:  Do you understand what is happening in court today?

THE DEFENDANT:  I do.

THE COURT:  All right.

Counsel, do either of you have any doubt as to the defendant's competence to plead at this time?

MR. MCMEYER:  The Government does not.

MR. FULTZ:  None, Your Honor.

THE COURT:  Based on the defendant's responses to my questions, my own personal observations of the defendant, and counsel's representation, I find that the defendant is competent to understand these proceedings and to enter a knowing and voluntary plea.

Mr. Jensen, have you had a sufficient opportunity to discuss your case with your attorneys, Mr. Fultz and Mr. Wykoff, who are here with you today?

THE DEFENDANT:  I believe so.  Yes, ma'am.

THE COURT:  And are fully satisfied with the counsel


www.escribers.net | 800-257-0885

1   representation and advice given to you throughout these

2   proceedings?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  Do you have a copy -- do you currently

    have a copy of the indictment?

5           THE DEFENDANT:  I -- yes.

6           THE COURT:  And you've had an opportunity throughout

7   this case to discuss the indictment with your attorneys; is

8   that correct?

9           THE DEFENDANT:  I -- yes, ma'am.

10          THE COURT:  All right.  The indictment charges you, as

11  I indicated before, with drug diversion, acquiring a controlled

12  substance by fraud, tampering with consumer products resulting

13  in serious bodily injury, and false statement regarding health

14  care matters.

15          Mr. McMeyer, do you agree that the charges contained

16  in Counts III, V, XIV, XV, XVII, XIX, and XX of the indictment

17  are -- those are accurate recitations of those charges?

18          MR. MCMEYER:  Yes, Your Honor.  They are.

19          THE COURT:   Mr. Fultz,  do you agree those are the

20  charges contained in the indictment to which your client

21  intends to plead guilty?

22          MR. FULTZ:  Yes, Your Honor.

23          THE COURT:  Thank you.

24          Mr. McMeyer, would you please explain precisely, and

25



in a meaningful manner, every essential element of the offenses charged to which the defendant intends to plead guilty?

MR. MCMEYER:  Yes, Your Honor.  As set forth in the plea agreement, the elements of the offenses are listed, but I will recite them for the Court now.  With respect to drug diversion, Counts I through VIII, the first element is the defendant distributed or dispensed a controlled substance as alleged in the indictment, in this case fentanyl.

Second, the defendant did so knowingly and intentionally.  That is to say, the defendant knew that the substance was a controlled substance under the law.  And third, the defendant did so knowingly, outside the usual course of professional practice, and not for a legitimate medical purpose.

With respect to the Counts IX through XVI, the elements are as follows:  First, the defendant knowingly obtained a controlled substance, again, fentanyl in this instance.  Second, that the defendant obtained and controlled the -- controlled substance by use of misrepresentation, fraud, forgery, deception, or subterfuge.

With respect to count -- excuse me.  With respect to Count XVII, there are a number of elements.  First, the defendant tampered with or attempted to tamper with a consumer product, its labeling, or its container.  To tamper with requires the alteration or adulteration of the item tampered,

again in this case, fentanyl.

Third the defendant -- or the consumer product affected interstate or foreign commerce.  And fourth, that the defendant acted with reckless disregard for the risk that would pose to another person, including the risk of the danger of death, bodily injury, and under circumstances, manifesting extreme indifference to such risk.  Finally, that the defendant's actions did result in serious bodily injury to an individual.

Your Honor, I would note for the record that serious bodily injury is defined slightly differently in this statute then it is in some other statues where it also includes significant pain and suffering, which is the allegation contained in the indictment.  With respect to Counts XVIII through XX, the first element is the defendant made a materially false, fictitious, or fraudulent statement or representation, that that statement was in connection with the delivery or payment of healthcare benefits, items, or services involving a healthcare benefit program.

Health care benefit program can be generally described as health insurance, both public and private.  And finally, that the defendant did so knowingly and willfully.

THE COURT:  Thank you very much.

MR. MCMEYER:  Thank you, Judge.

THE COURT:  Mr. Fultz, do you agree those are the



essential elements of the charges to which the defendant

intends to plead guilty?

        MR. FULTZ:  I do, Your Honor.

        THE COURT:  Thank you very much.

        Mr. Jensen, do you understand the essential elements

of the charges as just outlined and contained within the plea

agreement?

        THE DEFENDANT:  I believe so, ma'am.

        THE COURT:  All right.

        Mr. McMeyer, would  you please state the maximum

penalties for these offenses?

        MR. MCMEYER:  Yes, Your Honor.  With respect to Counts

III and V, there is a minimum sentence of five years in prison

under the (B)(1)(b) weight.  It is not more than twenty years

in prison.  There is not more than a 250,000 dollar fine, not

more than three years supervised release, and not more than a

100 dollar special assessment.  Excuse me.  There is a 100

dollar mandatory special assessment.

        With respect to Counts XIV and XV, it is not more than

four years in prison, not more than a 250,000 dollar fine, not

more than three years of supervised release, and again, a 100

dollar mandatory special assessment.  And I should note those

are on each count.

        With respect to tampering with a consumer product

resulting in serious bodily injury, it is not more than twenty



years in prison, not more than a 250,000 dollar fine, not more than three years of supervised release, and again, a 100 dollar special assessment.

And with respect to Counts XIX and XX, again, it is not more than five years in prison, not more than a 250,000 dollar fine, not more than three years of supervised release, and a 100 dollar mandatory special assessment.

Should the Court choose to run all of these sentences consecutively, it would be accumulative of not more than seventy-eight years in prison, not more than a 1.75 million dollar fine, not more than twenty-one years of supervised release, and a mandatory 700 dollar special assessment.

Thank you very much.

Mr. Fultz, do you agree those are the potential penalties that the charges carry?

MR. FULTZ:  Yes, Your Honor.

THE COURT:  Thank you.

Mr. Jensen, do you understand the potential penalties that were just outlined and contained within the plea agreement?

THE DEFENDANT:  I believe so.  Yes, ma'am.

THE COURT:  You say you believe so.  Is there a qualification --

THE DEFENDANT:  No.

THE COURT:  -- that I need to understand?



1

          THE DEFENDANT:  No, ma'am.  No, ma'am.  I understand.

2

          THE COURT:  Okay.  So you do understand?

3

          THE DEFENDANT:  Yes, sir.  Yes, ma'am.

4

          THE COURT:  All right.  That's all right.  Don't

worry.

5

          All right.  So we'll go through the nature of the

6

charges a little bit further, as well as the consequences of

7

the plea.  I'm going to identify some things here to you, sir,

8

and then I'm going to ask you if you understand that, okay?

9

          THE DEFENDANT:  Yes, ma'am.

10

          THE COURT:  Do you understand that the offenses to

11

which you are pleading guilty are felony offenses, and if your

12

pleas are accepted, that I will then adjudge you guilty of

13

those offenses, and that adjudication may deprive you of

14

valuable civil rights such as the right to vote, the right to

15

hold public office, the right to serve on a jury, or the right

16

to possess any kind of firearm?

17

          THE DEFENDANT:  Yes, ma'am.

18

          THE COURT:  Do you understand that I may also order,

19

and may be required to order, restitution to any victims of the

20

offenses?

21

          THE DEFENDANT:  Yes, ma'am.

22

          THE COURT:  Do you understand also that you may be

23

subject to enhanced punishment in the future if you are

24

convicted of another crime in the future?

25



THE DEFENDANT: Yes, ma'am.

THE COURT: Under the Constitution and the laws of the United States, you have an absolute right to a trial by a jury. No one, including myself, as the judge of this court, the Government's attorney, your own attorney, or any agent of the Government can deny you your Constitutional right to a jury trial on the charges contained in the indictment, and this case would proceed to trial as scheduled at the end of this month, unless you enter a guilty plea here today. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you have a right to maintain your plea of not guilty as to the charges? Do you understand that, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: Thank you. At trial, you would have the right to assistance of counsel for your defense. You would have a right to a trial before a jury of twelve men and women who would sit in the jury box in this courtroom, and you and your attorneys would be able to participate in the selection of that jury. Do you understand those rights?

THE DEFENDANT: Yes, ma'am.

THE COURT: At the trial, you would be presumed to be innocent, and the Government would have the burden of producing competent evidence before the jury that convinced each and every one of those twelve jurors of your guilt beyond a

reasonable doubt before you could be found guilty. You would

not have to prove that you were innocent. Do you understand

that?

        THE DEFENDANT: Yes, ma'am.

        THE COURT: And during that trial, the witnesses for

the Government would have to come before the Court and testify

in your presence, and your counsel could cross-examine the

witnesses for the Government, as well as object to evidence

offered by the Government. Do you understand that right?

        THE DEFENDANT: Yes, ma'am.

        THE COURT: And you could, if you choose, present

evidence on your own behalf, although there is no burden or

obligation for you to do so. You would also have the right to

compel the attendance of witnesses to testify in your defense.

Do you understand those rights?

        THE DEFENDANT: Yes, ma'am.

        THE COURT: And at that trial, you would also have the

right to testify in your own behalf if you wanted to. You

would also have the right not to testify and no inference or

suggestion of guilt could be drawn from the fact that you did

not testify. Do you understand that?

        THE DEFENDANT: Yes, ma'am.

        THE COURT: Now, these are very important rights

guaranteed to you by the Constitution and the laws of the

United States. And you must understand that if you plead



guilty here today, and I accept those pleas, you will be waiving your right to a trial, as well as the other rights that I have just discussed with you, so there would be no trial. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: And also, as part of the proceeding here today, you will have to waive your right not to incriminate yourself because I am going to ask you a series of questions about what you did in order to satisfy myself that you are in fact guilty as charged. You will have to acknowledge your guilt in open court here today. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Having discussed those rights with you, do you still wish to plead guilty?

THE DEFENDANT: Yes, ma'am.

THE COURT: I have in front of me the plea agreement, and it appears on page 26 of this agreement, sir, that this is your signature. Did you sign the document? The plea agreement?

THE DEFENDANT: I did, ma'am.

THE COURT: All right. And did you read the document in its entirety before you signed the agreement?

THE DEFENDANT: Yes, ma'am.

THE COURT: And did you have an opportunity to discuss with your attorneys and ask any and all questions that you had



regarding this plea agreement before signing it today?

THE DEFENDANT: I did, ma'am.

THE COURT: And did the attorneys answer all of the questions about the plea agreement?

THE DEFENDANT: He did, ma'am.

THE COURT: Does the plea agreement represent, in its entirety, any understanding that you have with the Government? So any agreements that you have with the Government are contained within the plea agreement; is that correct?

THE DEFENDANT: I think so. Yes, ma'am. Yes, ma'am.

THE COURT: Thank you. I'm now going to discuss some specific provisions of the plea agreement, which we'll then move to pages 10 and 11. Paragraphs 20 through 26 outline your waiver of your rights to appeal and collateral attack. You are agreeing to give up all rights of appeal, to appeal any and all issues relating to your convictions, as well as to the sentence imposed.

That includes any term of imprisonment, probation, supervised release, supervised release condition, any fine, forfeiture, order, restitution, as well as the manner and or method in which the sentence was determined. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you have any questions about those sections?



1    THE DEFENDANT:  No, ma'am.

2    THE COURT:  Now, there is a right that exists in
federal law to bring a case later in time.  The case you would

3    bring would be different and outside of the case we are talking

4    about today.  That's why it's called collateral.  It means you

5    are attacking something you believe happened improperly in this

6    criminal case at some later time.  Do you understand that?

7    THE DEFENDANT:  No, ma'am.

8    THE COURT:  All right.

9    THE DEFENDANT:  Would you mind repeating that?

10    THE COURT:  Yes.  So if you can go directly -- do you

11    have the plea agreement --

12    THE DEFENDANT:  I do.

13    THE COURT:  -- in front of you?

14    THE DEFENDANT:  I do.

15    THE COURT:  Page -- let's look.  The collateral attack

16    is starting at page 22.

17    THE DEFENDANT:  Oh.  I'm way behind the entire

18    paragraph.

19    THE COURT:  I'm sorry.  Paragraph 22.  That's my

20    mistake.  In this, it's identifying your waiver of the rights

21    to appeal, as well as collateral attack.  And the collateral

22    attack is saying, specifically in paragraph 22, that that

23    waiver includes, but is not limited to, the waiver of your

24    right to bring any claim that the statutes under which you are

25

convicted or sentenced are unconstitutional, and or the conduct to which you are admitting to does not fall within the scope of the statute. Do you understand that, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you understand that you're giving up your right to do that, correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you have any questions about the waiver of appeal or collateral attack?

THE DEFENDANT: No, ma'am.

THE COURT: Do you understand that the waivers I just identified do not apply to a claim that you received ineffective assistance of counsel? So you would retain that limited right to appeal and file a collateral attack.

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Do you understand the terms of the plea agreement?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you understand that the Court is not bound by this agreement, which -- it's a contract between you and the Government? Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you understand the terms of the plea agreement are merely recommendations to the Court, and that I can reject those recommendations without permitting you



to withdraw your pleas of guilty, and that I can impose a
sentence that is more severe than you anticipate, up to the
maximum permitted by law?

          THE DEFENDANT:  Yes, ma'am.

          THE COURT:  Do you understand that if I decline to
impose any sentence recommended by the Government or by your
counsel, and I impose a more severe sentence, you will not be
entitled to withdraw your guilty plea?

          THE DEFENDANT:  Yes, ma'am.

          THE COURT:  Mr. McMeyer, are there any other
provisions of the plea agreement you believe I should address
with the defendant?

          MR. MCMEYER:  Your Honor, not specifically of the plea
agreement.  I am looking at my own checklist, and I'm not sure
that the Court has covered the requirement for the guideline
calculations in the PSR?

          THE COURT:  That's the next part.

          MR. MCMEYER:  Okay.  I apologize.

          THE COURT:  To be continued on that.  We'll --

          MR. MCMEYER:  Very good.

          THE COURT:  -- get to it.

          MR. MCMEYER:  Thank you, Judge.

          THE COURT:  But other than that, anything else?

          MR. MCMEYER:  No, Your Honor.  Thank you.

          THE COURT:  All right.



1          Mr. Fultz, same question?

2          MR. FULTZ:  Your Honor, is it the Court's intention to

3   cover the financial obligations as well at a later point?

4          THE COURT:  That was not intended.

5          MR. FULTZ:  The reason I --

6          THE COURT:  The financial obligations which are

7   contained with -- on what page?

8          MR. FULTZ:  Your Honor --

9          MR. MCMEYER:  Paragraph 16.

10         MR. FULTZ:  -- it's the paragraph 8, page 16.

11         THE COURT:  Page 16.

12         MR. FULTZ:  The reason I know that for the Court --

13         THE COURT:  Um-hum.

14         MR. FULTZ:  -- is that there's a -- kind of an unique

15  provision in this particular plea agreement that requires Dr.

16  Jensen to reimburse the Government for various expenses

17  incurred in preparing for trial.  I just would ask the Court to

18  over that with him.

19         THE COURT:  Yes.  Absolutely.  All right.

20         And so page 8, paragraph 16, under the heading

21  "Financial Obligations", Mr. Jensen, have you had the

22  opportunity to review this paragraph specifically?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  All right.  And that, as part of this, you

25  are agreeing that restitution shall include restitution of the



victims of the offenses which are uncharged or counts which are dismissed. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: And that restitution may also include the investigative costs of incarceration and the cost of supervision. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: And that restitution shall include the cost of the Government in obtaining expert witnesses as well as other witnesses?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. And that the parties acknowledge, as part of this agreement, that the Court shall order the payment of costs of the Government's expert witnesses, any other Government witnesses, and may order other restitution in whatever amount that I deem proper? Do you understand that, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: Does that sufficiently and adequately address the financial obligations?

MR. FULTZ: Yes, Your Honor. And I don't mean to pick at you. And I --

THE COURT: Oh, I --

MR. FULTZ: -- really don't, but would you also remind him of his obligations under paragraph 18 on page 9?



1

          THE COURT:  Yes.

2
          Paragraph 18 specifically identifies, sir, that you

3
are agreeing not to dissipate assets or to request any delay or

4
stay in the payment of any and all financial obligations.  Do

5
you understand that?

6
          THE DEFENDANT:  Yes, ma'am.

7
          THE COURT:  All right.

8
          MR. FULTZ:  Thank you, Judge.

9
          THE COURT:  All right.

10
          And as part of sentencing admonishments, sir, Mr.

11
Jensen, do you understand that your sentence will be determined

12
by a combination of advisory sentencing guidelines, possible

13
authorized variances from those guidelines, and other statutory

14
sentencing factors?

15
          THE DEFENDANT:  Yes, ma'am.

16
          THE COURT:  And have you had the opportunity to talk

17
to your attorneys about how these advisory sentencing

18
guidelines might apply to your case?

19
          THE DEFENDANT:  Yes, ma'am.

20
          THE COURT:  Do you understand that I will not be able

21
to determine what that advisory sentencing guideline range will

22
be for your case until the pre-sentence investigation has been

23
conducted, and a written report will be prepared, by the

24
Probation Department.  Do you understand that?

25
          THE DEFENDANT:  Yes, ma'am.  And that after the



1  written pre-sentence investigation report is completed and

2  prepared, you, as well as the Government, will have an

3  opportunity to challenge the reported facts, as well as the

4  application of the guidelines recommended by the probation

   officer.  Do you understand that?

5
        THE DEFENDANT:  Yes, ma'am.

6
        THE COURT:  And that the sentence ultimately imposed

7
   may be different from any estimate your attorneys have given

8
   you up to this point.  Do you understand that?

9
        THE DEFENDANT:  Yes, ma'am.

10
        THE COURT:  And then, after the initial advisory

11
   guideline range has been determined, that I have the authority

12
   in some circumstances to vary upward or downward from the

13
   guideline range, and that I will also examine other statutory

14
   sentencing factors contained within Section 3553(a) that may

15
   result in an imposition of a sentence that is either greater or

16
   lesser than the advisory guideline range?  Do you understand

17
   that?

18
        THE DEFENDANT:  Yes, ma'am.

19
        THE COURT:  To counsel.

20
        We'll start with Mr. McMeyer.  Are there any other

21
   provisions of the plea agreement that we need to address?

22
        MR. MCMEYER:  Not to my knowledge, Your Honor.  The

23
   one issue that we may want to touch on is, I know that you've

24
   covered the right to counsel, but I would note that the

25



defendant currently has retained counsel.  And I think it would be worth covering the fact that if for some reason he was not able to continue affording counsel, the counsel would be appointed to him.

THE COURT:  All right.

So sir, Mr. Jensen, I do understand that you have retained counsel in this case, but do you understand that if you are no longer able to financially pay for the retained counsel, and they would need to withdraw, and I allow for the withdrawal of counsel, that then you would be afforded -- pursuant to Constitutional provisions, you would be afforded an attorney.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.

Any other provisions that we need to address, Mr. McMeyer?

MR. MCMEYER:  No.  Thank you, Judge.

THE COURT:  Anything further from the plea agreement, Mr. Fultz?

MR. FULTZ:  Your Honor, if the Court would be willing to take a look at paragraph 29(c).  There's a rather unique provision in this plea agreement because there's some uncertainty as to whether or not the safety valve will apply. And while the Government does not seek to impose that -- or does not seek to -- let me just say this.  The Government's not



1  seeking the safety valve, but should the Probation Office feel

2  that it applies, even though we may challenge that, ultimately,

3  that's up to the Court.

          THE COURT:  Yes.

4         So that is contained --

5         Mr. Jensen if you want to follow along?  That's page

6  13, paragraph 29(c), where it states that, "The parties agree

7  to recommend to the Court that the defendant's safety valve

8  eligibility, which is under 18 United States Code section

9  3553(f), is not barred by his possession of firearms during the

10 investigation of this case."

11        It is important for you to understand that that is

12 simply a recommendation to the Court.  And that the

13 recommendation is not binding on the Court, and the parties,

14 including yourself, Mr. Jensen, you're acknowledging that the

15 defendant must still meet all of -- all the other safety valve

16 requirements, including a full and truthful proffer to the

17 Government.  Do you understand that?

18        THE DEFENDANT:  Yes, ma'am.

19        THE COURT:  All right.  And then it says that, "The

20 parties otherwise agree that, absent the application of the

21 safety valve, the defendant was responsible for forty or more

22 grams of fentanyl, which would subject to him to a five year

23 mandatory minimum."  Do you understand that?

24        THE DEFENDANT:  Yes, ma'am.

25



THE COURT:  And then, as part of section D, it says, "The parties additionally agree that to the extent it is determined that you would qualify as a zero-point offender under the sentencing guideline 4C1.1, then the corresponding reduction should be applied."  Do you understand that?  That that's part of your plea agreement?

THE DEFENDANT:  I'm sorry.  Would you mind repeating that again, Your Honor?

THE COURT:  That's okay.

THE DEFENDANT:  Please.

THE COURT:  I know.  We're going through a lot here today.

THE DEFENDANT:  I know.

THE COURT:  So please --

THE DEFENDANT:  And that's okay.

THE COURT:  -- make sure to ask me to rephrase or repeat at any time.

THE DEFENDANT:  Thank you.

THE COURT:  Section D, page 14, at the top, states that, "The parties are agreeing that to the extent it is determined you are, and would qualify, as a zero-point offender under the guideline section which is 4C1.1, then the corresponding reduction would be applied as part of the guideline sentencing calculation.  Do you understand that part?

THE DEFENDANT:  Yes, ma'am.



1    THE COURT:  All right.

2    Mr. Fultz, were all formal plea offers by the
Government conveyed to the defendant?

3

4    MR. FULTZ:  They were, Your Honor.

5    THE COURT:  Any additional nuances as part of the plea
agreement that you believe I should address with the defendant?

6

7    To the Government?

8    MR. MCMEYER:  Your Honor, since we did talk about the
sentencing, I would just note paragraph B on page 13 does note

9
that the Government is not going to provide its one

10   discretionary point for acceptance responsibility based on the

11   trial preparation that's had to be done to this point.

12   THE COURT:  All right.  So yes.

13   As paragraph B states on page 13 --

14   MR. FULTZ:  May I have one second, Your Honor?

15   THE COURT:  Yes, you may, Mr. Fultz.

16   MR. FULTZ:  I apologize.  I didn't hear what you were

17   saying.  If I could have one second?

18   THE COURT:  That's not a problem.

19   MR. FULTZ:  Okay.

20       (Counsel confer)

21   MR. FULTZ:  Your Honor, would the Court be willing to

22   tell me what you just said?

23   THE COURT:  Sure.  I think I was just going to start

24   identifying and reading and making sure the defendant

25



understood, which would be paragraph 29(b) on page 13.  Mr.

McMeyer wanted to bring to the attention and make sure that the

defendant understands that even if his offense level is sixteen

or higher, as part of the pre-sentence investigation, that the

Government is not going to agree to an additional one-point

reduction in the defendant's offense level.

Do you understand that, sir?

THE DEFENDANT:  No, ma'am.

THE COURT:  All right.  Well, we'll restate it.  And

it's okay.

THE DEFENDANT:  Well, I --

THE COURT:  We're going through --

THE DEFENDANT:  I -- the point system is -- is foreign

to me if you'll beg my ignorance.

THE COURT:  That's okay.  So as part of -- when the

pe-sentence investigation report is prepared, as part of

determining what offense levels you have, the Government has

the ability if -- in certain circumstances, if the offense

level is sixteen or higher, that the Government is not going to

agree to a one-point reduction.  So there are, at times, the

Government has the discretion to allow for a one-point

reduction and recommends it to the Court.

In this circumstance, pursuant to page 13, paragraph

29(b) of your plea agreement, it states that you understand

that even if your offense level is sixteen points or higher,

that the Government is not going to agree to an additional one-point reduction in your offense level.

THE DEFENDANT:  Okay.  I understand, ma'am.

THE COURT:  Okay.  Any questions about that provision?

THE DEFENDANT:  No, ma'am.

THE COURT:  All right.

Any further recommendations?

MR. MCMEYER:  No, Your Honor.  Thank you.

THE COURT:  That's okay.

Mr. Fultz, anything further?

MR. FULTZ:  No.  Thank you, Your Honor.

THE COURT:  All right.

Then I find the plea agreement to be in proper form. It will be filed of record under seal.  We will now move to the factual basis.

So Mr. McMeyer, would you please tell us what evidence the Government would present if this case were to go to trial, sufficient to establish a factual basis?

MR. MCMEYER:  Thank you, Your Honor.  I will be brief. The plea agreement sets forth the facts in some detail, as does the indictment, which is incorporated into the plea agreement. But to state it succinctly, the defendant engaged in a pattern and practice of stealing fentanyl from his patients.  He deceived his staff and others, the insurance companies involved, by indicating that he had given full strength



fentanyl to his patients when in fact, he had diluted and
removed half the fentanyl -- at least half the fentanyl from
every vial.

This was an issues that came to light when his staff
was noticing patients moving in the operating room, otherwise
expressing indications of being -- and in pain and not having
proper pain management.  They had noticed varying levels of the
volumes inside the vials of fentanyl.  They had noticed
condensation in the vials of fentanyl.  They tried moving the
fentanyl to different locations, thinking that perhaps there
was something wrong with where they were storing it, or that
there was an issue with another member of the staff, when in
reality it was the defendant taking the fentanyl all along.

He would take half the fentanyl for his own personal
use.  He would reinject the single use vial with saline or
other foreign substance to disguise what he had done.  He would
then super glue the -- or take other adhesive to attach the
safety cap back onto the top to obscure his tampering, and then
use that adulterated substance when he injected his patients as
part of the surgeries he performed.

With respect to Count XVII, that resulted in a victim
by the name of S.M. (ph.), who's been identified in the
indictment, who woke during her surgery.  She was having all of
the teeth in her mouth removed for the fitting of dentures.
She had to complete the surgery without the benefit of



anesthesia, without the benefit of the pain management she was supposed to receive. That included her being awake when she had three teeth removed and when she had the bones in her jaws ground smooth so that the dentures would fit.

She would testify that she was -- that she thought she was going to die during that process. She will testify that she shat herself. She would further testify that when she woke up, the defendant hit her in the head with something known as a Minnesota Retractor. She would testify, as would the staff who were present for that surgery, of that occurrence happening. The Government would present photographs of the fairly large goose egg above her left eye from that contusion that she received, and the fact that she then went to Carle Hospital where she was nearly intubated because of the severe swelling that took place.

And so that's the sum and substances of the case, Your Honor.

THE COURT: Thank you very much.

Mr. Fultz, do you agree that would be the Government's evidence in the case if this would go to trial?

MR. FULTZ: Your Honor, we stipulate that that would be the evidence the Government could present at trial. Thank you.

THE COURT: Thank you.

Mr. Jensen, do you agree -- well, we'll start with,



have you read -- starting on page 17 of the plea agreement,
have you read the stipulation of facts that starts on page 17
and appears to end on page 21?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. And do you agree with the
Government's summary and the stipulation of facts of what you
did?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. And did you do what the
Government said you did?

THE DEFENDANT: Yes, ma'am.

THE COURT: Has anyone attempted in any way, sir, to
force you to plead guilty or otherwise threaten you?

THE DEFENDANT: No, ma'am.

THE COURT: Has anyone made any promises or assurances
of any kind to get you to plead guilty here today, other than
what's contained within the written plea agreement?

THE DEFENDANT: No, ma'am.

THE COURT: Are you pleading guilty because you are
guilty?

THE DEFENDANT: Yes, ma'am.

THE COURT: And are you doing this of your own free
will?

THE DEFENDANT: I am, ma'am.

THE COURT: Thank you.



1          Mr. McMeyer, are there any advisements I have not
2    given to the defendant that you believe I should before he
3    pleads guilty?

4          MR. MCMEYER:  No, Your Honor.  I believe they've all
5    been covered.

6          THE COURT:  Thank you.

7          Mr. Fultz, same question?

8          MR. FULTZ:  No.  Thank you, Your Honor.

9          THE COURT:  All right.

10         Mr. Jensen, how do you now plead to Count III of the
11   indictment which charges drug diversion?

12         THE DEFENDANT:  Guilty, ma'am.

13         THE COURT:  How do you now plead to Count V which
14   charges you with drug diversion?

15         THE DEFENDANT:  Guilty, ma'am.

16         THE COURT:  How do you now plead to Count XIV which
17   charges you with acquiring a controlled substance by fraud?

18         THE DEFENDANT:  Guilty, ma'am.

19         THE COURT:  How do you now plead to Count XV which
20   charges you with acquiring a controlled substance by fraud?

21         THE DEFENDANT:  Guilty, ma'am.

22         THE COURT:  How do you now plead to Count XVII which
23   charges you with tampering with consumer products resulting in
24   serious bodily injury?

25         THE DEFENDANT:  Guilty, ma'am.


www.escribers.net | 800-257-0885

1          THE COURT:  How do you now plead to Count XIX which

2    charges you with false statement relating to healthcare

3    matters?

4          THE DEFENDANT:  Guilty, ma'am.

5          THE COURT:  How do you now plead to Count XX which

6    charges you with false statement relating to healthcare

7    matters?

8          THE DEFENDANT:  Guilty, ma'am.

9          THE COURT:  Thank you, sir.

10         It is the finding of this Court that Mr. Jensen is

11   fully competent and capable of entering into informed pleas of

12   guilty, that the defendant is aware of the nature of the

13   charges and the consequences of the pleas, and that the pleas

14   of guilty are knowing and voluntary pleas, supported by an

15   independent basis in fact containing each of the essential

16   elements of the offenses.

17         I therefore accept the defendant's guilty pleas as to

18   Counts III, V, XIV, XV, XVII, XIX, and XX of the indictment.  I

19   will order a pre-sentence investigation be conducted and a

20   written pre-sentence investigation port be prepared.

21         Mr. Jensen, you will be required to provide

22   information to the Probation Office for that report.  Your

23   attorneys may be present with you if you would like for them

24   to.  I will order the implementation of sentencing guidelines

25   be entered in this case.  I will vacate the pretrial conference



that is set for Thursday, August 8th, as well as the jury trial
that is set for August 19th.

I have a sentencing available to be set for Wednesday,
December 4th at 1:30 if that's available for everyone?

MR. MCMEYER: That works for the Government. Thank
you, Judge.

THE COURT: Counsel?

MR. FULTZ: Works for the defense, Your Honor. Thank
you.

THE COURT: All right.

Then the sentencing will occur in this courtroom
December 4th at 1:30.

Is there anything else that we need to address at this
time?

To the Government?

MR. MCMEYER: Not for the Government. Thank you,
Judge.

THE COURT: Mr. Fultz?

MR. FULTZ: Your Honor, the only thing I would bring
to the Court's attention, and I've spoken to Mr. McMeyer about
this, is that we do plan to file a petition for review of Judge
McNaught's detention decision. And so I just wanted to let the
Court know that would be coming at some point.

THE COURT: All right. Thank you very much. I will
look for the filing, but in the meantime, sir, he is going to



be then detained pursuant to that order and is now in the

custody of the United States Marshal.

Court is adjourned.  Thank you very much everyone.

MS. SENOR-MOORE:  Thank you, Your Honor.

MR. MCMEYER:  Thank you, Judge.

(Proceedings concluded at 11:11 a.m.)



C E R T I F I C A T I O N

1

2

        I, Sarah Barnes, court-approved transcriber, do hereby

3

certify the foregoing is a true and correct transcript from the

4

official electronic sound recording of the proceedings in the

5

above-entitled matter.

6

7

8

9  _____          _____

November 21, 2024

10  Sarah Barnes                             DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


www.escribers.net | 800-257-0885